next case on the calendar which is Ross v. Annucci, 21-1281. Counsel come up to the front. I understand we have attorney Louie and attorney Steward. And attorney Louie, am I pronouncing your name right? It's Louie. Louie. So you would like to reserve two minutes for rebuttal, I understand? Yes, your honor. So you may proceed when you're ready. May it please the court, my name is Angie Louie for the petitioner Gerald Ross. Here where Mr. Ross presented evidence that his attorney did not advise him that he faced a maximum sentence of eight years of imprisonment when he was considering whether to accept a plea offer and that misadvice was supported by on the record evidence that all the parties seemingly thought prior to trial that his maximum sentencing exposure was only four years of imprisonment, there's clear and convincing evidence that the state court was wrong in finding his attorney effective. Moreover, the state court's insistence that Mr. Ross had to provide a definite statement that he would have accepted the plea offer had he known his true sentencing exposure was an unreasonable application of clearly established federal law. So what was the standard that the state had to establish for not deficient performance but for prejudice? It was reasonable probability that he would have taken the plea, right? All Mr. Ross needed to show was that there was a reasonable probability that he would have taken a plea. So what did he submit on that?  He did say that he would seriously consider their plea. But this court in applying the second prong of Strickland has looked at both subjective and objective evidence together to determine whether there meets the reasonable probability. And why should this, this court has looked at it? Yes, Your Honor. Okay, but the state court doesn't have to do what the Second Circuit says when we're in 2254 land, right? They only have to do what the Supreme Court has said, right? Yes, but the Supreme Court has also in Williams v. Taylor not required a defendant to state that he would have definitely accepted the plea. That burden, that is a clear and convincing burden, and he doesn't need to meet that. All the Supreme Court requires under the second prong of Strickland is reasonable probability. And here, where Mr. Ross has shown under subjectively his affirmation, he would have seriously considered and he would have- Right, so how do you get subjectively from I would have seriously considered the plea to there's a reasonable probability I would have taken the plea? Because doesn't it appear, I thought he basically said, look, under the bad advice I got, I seriously considered the plea. So it seems like his seriously thinking about a plea doesn't mean he'll more or he's more or less likely to take it. So the seriousness of his consideration, it sounds like he always took his case seriously. But why is it that his serious consideration of something would suggest that he would or would not reach a particular decision? I think that's the question. I think the question or what Mr. Ross only really needed to meet was that it would have affected his calculus in determining whether he would have- But he didn't say that. He didn't say it would have changed my calculus. He didn't say that. What he said is I would have seriously considered the plea. And wouldn't you agree that the record shows that he said he seriously considered the other plea? But his claim, of course, is that it was bad advice. But when he doesn't say I would have seriously considered it and I likely would have reached a different conclusion, he doesn't have to have certainty. He doesn't have to swear 100% I would have taken the plea. But he hasn't said anything beyond how seriously he would have thought of it. But that's why this court also looks up the objective evidence that's presented. And in this case, Mr. Ross was sentenced to four times what he was offered at the plea offer. He was offered two years. He was sentenced to eight. We have a very strong case if we can look at it from hindsight. But the problem is this is not- Hindsight is not permissible. It may turn out that the sentence was much harsher as a result of his decision. But we have to look at the situation without the benefit of hindsight. But this court has always looked at the objective evidence, which is what the sentence was offered and then what the defendant was actually sentenced in order to look at the second prejudice prong of Strickland. And here- But the question is what would he have ultimately, you know, would he have, if he'd been notified of this, that it could be consecutive. It still could be two years, right? It's, or it could be four years. But, you know, how did he know what, I mean, nobody knew what the judge was ultimately going to do. Absolutely, Your Honor. But it is at that time when he wasn't given the correct sentence exposure that we have to look at whether it would have changed the calculus of his calculation on whether he would take it. Right. And he didn't say that he would have definitely taken the plea as the discussion has developed, it was seriously considered. And the question really is whether that is sufficient. Do you have any cases where serious consideration but not an actual likelihood of taking the plea has been in the record? I mean, there's no case that actually uses the word seriously considered. But if your court looks, if the court looks at Mask v. McGinnis where the defendant doesn't swear either that he would have definitely taken the plea, but instead the court looks at all the previous other plea offers that he was given and then concluded that there must have been some sort of change in calculus had he been given the correct advice. That's the standard that we're looking at right now. I understand your point, but first of all, let's go back to the beginning of it and see what the advice was. There was no discussion in the record of the two of the consecutives. But the lawyer said what her normal practice was, and that was to fully advise the client. She couldn't remember the case, but her normal practice was to fully advise the client of the exposure that the client was facing. And why isn't that something that can be taken into account? It could be taken into account, but the lawyer's affirmation does not mean that she just didn't get it wrong in this case. And there's on-the-record evidence that suggests that she did get it wrong. When they're talking about whether Mr. Ross was going to accept the plea offer at the eve of trial, the court asks, and you made it clear to him that he potentially faces a possible sentence of four-year determinate sentence and 15 years post-relative revision. And she answers affirmatively, yes. Nobody spoke, they weren't focusing on two counts, they were focusing on one count. Your Honor, it's ambiguous, but any reasonable jurist, especially one who has practiced criminal law, understands in that context, on the eve of trial, right before a suppression hearing, right before a jury pool was going to be called in for voir dire, when a defendant says that they're not going to take a favorable plea offer, the court has every incentive to advise the defendant of the possible sentence. That includes aggregate consecutive sentences. So if you look. The other problem I have here, I understand your argument at this point. The other argument I have is that the defendant was claiming innocence and did not want to take a plea. That was the position the defendant took until after he was sentenced, you know, to the full. Yes, but this court has recognized that even defendants who have asserted their innocence when faced with the correct advice during the plea negotiation process may have changed their mind. And Mr. Ross' affirmation, along with the sentencing disparity between what he was actually sentenced and what he was offered, meets that prejudice. And so, your honors, we would ask that you grant Mr. Ross' right. Let me just see. Was there a question from Judge Robinson? No, that's okay. Okay. Thank you. And you've reserved two minutes for rebuttal. So we'll see you again shortly. Why don't we hear from Attorney Stewart. Good morning. Good morning, your honors. May it please the court. My name is Priscilla Stewart from the State Attorney General's Office. I represent the respondents in this matter. Your honor, the court should affirm the decision of the district court. The state court here reasonably applied Strickland and Lafler to deny Petitioner's claim that counsel provided ineffective assistance during plea negotiations. The state court's factual findings here, which were based on the motion papers, are entitled to a presumption of correctness on habeas review. And Petitioner has not rebutted that presumption. Counsel, can I ask a question about that presumption? Yes, ma'am. You know, we've got this language in D2 that just talks about reasonableness. And then we have E1. And all I'm finding is both the Supreme Court and this court acknowledging the tension between them and not resolving it. And so, you're asserting that essentially the E1 standard applies. Is there a precedential case that tells us that that's, in fact, the standard? I believe I've cited those provisions in my brief, your honor. I'm sorry, when you step away from the microphone, it's hard to hear you. So, whatever you just said, if you wouldn't mind saying it again, since you're now at the microphone. I believe that I've cited that in my brief. Is it a Second Circuit case or a Supreme Court case? Let's see. On page 31 in my brief, I state that the state court's finding is presumed correct on a habeas review unless petitioner rebuts that presumption by clear and convincing evidence. And I cite Burt v. Titlow as a Supreme Court case and Martinez v. Capra. And that's a Second Circuit case. What I'm struggling with is I understand that standard sort of on its own terms. But when I look at, for example, Brunfield v. Kane in 2015, the U.S. Supreme Court specifically acknowledges that they're not sure, they don't have to decide how the unreasonable determination of the fact standard relates to this higher more deferential standard that you're relying on. When I look at Appellant's brief, they're relying on the unreasonable determination of the fact standard. I listen to your argument and you're relying on the more deferential standard. And I'm just trying to figure out how we decide which of those applies when I don't think either we or the Supreme Court has created a roadmap. Your Honor, I don't think that you need to even reach that conclusion here either. I think that under either E1 or D2, the decision is the same. Because the state court's determination was reasonable. The state court did have the petitioner's motion papers, including an affidavit from petitioner and affidavit from Ms. Pelosi and the excerpts that she's relying on to establish the allegation that she was somehow confused about the possibility that consecutive sentences could be imposed here. What's your best case for the proposition that our deference to the state court as to a fact finding, and I'm putting it in quotes because I think the state of fact findings is often something that flows from presentation of evidence. But what's your strongest case that the level of deference is unaffected by the fact that in the face of these conflicting indications in the written affidavits, the court didn't hold an evidentiary hearing to test its assumptions? The court isn't required to conduct an evidentiary hearing in order to make findings of fact. And in fact, under CPL 44030 subdivision 4, where the court can make a determination and deny a motion without conducting a hearing if the motion is based on the existence or occurrence of facts and the motion papers don't contain sworn allegations substantiating or tending to substantiate all of the essential facts. Or the court can deny a hearing, can deny a motion without conducting a hearing if an allegation of fact is single to support the motion is made solely by the defendant and is unsupported by any other affidavit or evidence. And under the circumstances attending the case, there's no reasonable possibility that the defendant's allegations are true. And that's exactly the determination that the state court here made. In this case, we have the, I'm sorry for cutting off, I'm just, I don't want to lose your time, but we have the defendant's own testimony, but we also have on the record, and I actually part ways a little bit with your counterpart, I don't find it ambiguous at all. The court on two different occasions is describing, in one case it's the court and in one case it's the state, describing defendant's total exposure because that is a relevant fact to the question of whether they understood the plea that they were rejecting. And the court says directly to counsel, did you tell him that he faces four years if he doesn't plead? And counsel says, yeah, now that's not a self-serving statement from defendant. And doesn't that at least create enough of a question that relying on the lawyer's general pattern of correctly advising is to the maximum level? We may require a little bit more factual development to understand how that fits in. Well, first, the court was unpersuaded by the, by that, by the first, by that particular conversation that it demonstrated that she didn't understand what that, that consecutive sentences were possible. As Judge Walker pointed out, I'm sorry, Your Honor. They were talking about one count of the indictment. At that, at that, at the time that this conversation took place, Petitioner had already made the decision not to accept the plea. There was a bench conference for, and at that bench conference, Ms. Pelosi wanted to make a record to let the parties know that the, the plea offer has been considered and rejected, and now we're going forward with the, with the, the hearing. And at that point, the only thing they were talking about was the one count that was under consideration, which was one count of first degree attempted sex abuse. But, Your Honor, in any event, both, each count did carry a maximum sentence of four years. And no one at that point had brought up the possibility of whether there would be concurrent sentences imposed or consecutive sentences imposed. But if the court's concern was, counsel, I want to make sure that defendant has rejected this plea offer with full knowledge of his exposure. And the court describes his exposure as four years. And counsel doesn't take issue with that. Doesn't, doesn't that, I mean, defendant is sitting there. He's hearing this, right? So. But the defendant has already, at that point, the defendant had already decided not to take the plea. And the court was just making a record with the attorney. And if the four year maximum was inconsistent with the defendant's understanding of what he faced, then he may have been, well, wait a minute, I thought I faced eight years. They, there wasn't. Well, it's not, it's eight years if you consider that it would be consecutive sentencing. Sure. But it's four years as to each count. Right, but what was his, was he actually exposed to consecutive sentencing? He was exposed to consecutive sentencing, but that was not the question that the court brought up. And it wasn't what the defense attorney brought up. However, Your Honor, it can be read in the way that you're positing. But it can also be read in the way that I'm discussing with you. And the issue is, this is what was put in front of the state court. And the state court looked at this and decided that this is not, this does not demonstrate what counsel was thinking in terms of, does she realize that consecutive sentences can be imposed, and did she advise him accordingly? And Your Honor, before my time is up, I do want to address the second, the prejudice issue. Your Honor, Petitioner never alleged that with proper advice about the possibility of consecutive sentencing, he would have accepted the plea and pleaded guilty. Well, he doesn't have to, right? He. He has to show a reasonable probability. Yes. He does not need to show with certainty that he would have accepted the plea, right? He needs to show a reasonable probability that the outcome of the plea process would have been different had he known about the possibility of consecutive sentencing. And the outcome of the plea process would be him taking the plea. Him taking the plea. And therefore, it's a reasonable probability that he would have taken the plea, not certainty that he would have taken the plea. Exactly, Your Honor. But his pleadings didn't satisfy the state court that he would have taken the plea. This is the, Judge Zweibel, who decided the motion, is the same judge who decided over the proceedings from the beginning through sentencing. He was fully aware, as Ms. Pelosi stated during sentencing, that throughout the entirety of the proceedings, from arrest through conviction and even at sentencing, Petitioner insisted on his innocence. And he wanted to go through the trial because he wanted to vindicate his innocence. And given that he didn't say that the issue of the eight years would have made the difference and the court was fully aware about Petitioner's unwillingness to acknowledge his guilt, it was not unreasonable for the court to determine that his hedging about whether he would take the plea doesn't establish a reasonable probability. Well, that's the appellate division, as I understand, properly stated the reasonable probability standard, correct? Yes, exactly. So they didn't hold, they didn't conduct a Strickland analysis according to an incorrect legal standard? No, they did not. Okay. Okay, I don't think we have any further questions. Thank you very much. Thank you, Your Honor. Why don't we hear from the appellant? You've reserved two minutes for rebuttal. Your Honors, in our conversation with Judge Robinson, Ms. Stewart says of the court's conversation with Ms. Pelosi, it can be read one way or another. And I think that just highlights the unreasonableness of the state court's finding in this case without a hearing. And so we've provided clear and convincing evidence that the state court erred in finding that there was no error in this case, and it's been highlighted by the fact that there was no hearing here. Are you, what are you requesting? What relief are you requesting? We're requesting that Mr. Ross be offered the plea of two years again with five years of post-release supervision. Wouldn't he go back for a hearing? You're complaining about the lack of a hearing, right? Yes. Wouldn't he go back to the state court for a hearing and then a decision? No, Your Honor. The complaint is a little bit more nuanced than that. We're not complaining that there was no hearing. We're complaining that the state court's conclusion when there were so many ambiguities without a hearing was unreasonable, especially in the face of on-the-record evidence, and any reasonable jurist would look at that. Right, but then if it went back for a hearing, and they held a hearing, then at that point, you would have, it would be a different calculus, because the question is, then was the state court acting reasonably? If they adhered to their ruling after a hearing, then that argument would be, would be, your argument would be different, would have to be different. Yes, Your Honor, but this court has fashioned its remedies so that it is just narrowly tailored to what the relief would be, and at that point, to grant the writ, Mr. Ross would be offered the plea again, and then he can decide whether to take it, and also, the state court is allowed to determine whether they will allow Mr. Ross to accept the plea or not. And just to highlight the disparity between what he was offered and what he was ultimately sentenced, had Mr. Ross been given the correct advice... Do you think the government would have to offer, re-offer the plea? What if the government says, I'm not going to re-offer the plea, we're going to go to trial? I believe, Your Honor, the court can ask the government, and has in previous cases... We'd have to order the government. I'm sorry? We'd have to order the government to offer the plea, and I'm not sure we have that authority. Your Honor has done so in previous cases that has been cited both actually in the government's... Is it an order rather than a request? A request, I believe, is the same as an order. A request coming from us is persuasive. As a practical matter, I'm trying to figure out, as a practical matter... Because your client has served the incarcerative portion, even the higher amount, is the practical effect of, if the state were held to the prior offer, and your client had an opportunity to accept, it shortens the post-release supervision period? Yes, Your Honor, and it would mean a lot for Mr. Ross, because he would be completely done with his sentence, including post-release supervision. And as a level 3 sex offender, Mr. Ross has been subjected to residency requirements and reporting requirements that are special to people who are on parole. Having finished his entire sentence would allow Mr. Ross to move out of the shelter and move on with his life. Can I ask one more question about something you said, maybe about a minute ago, that the relief that you would seek would be us, I guess, entering some sort of an order that would allow him to... allow the defendant to decide whether he wanted to take the original offer. And I understand that. But then I think you said, and then the state court would have to decide whether to accept the offer. I guess I'm not familiar enough with the plea practice in state court. Would the state trial court generally have some form of review over whether it was willing to accept that plea? It would not be... It would have some discretion to say no, even if the defendant wanted to take it? Generally, yes, Your Honor. Even if a defendant wanted to take it, the court has to agree to the plea offer. In this case, I don't see why the court wouldn't accept it just because it was trying to get Mr. Ross to take the plea offer on the eve of trial, and everyone seemed to agree that the two years plus five years of post-release supervision was sufficient. And had he been given the correct advice about the sentences running consecutively, the calculus would have been different. Okay, that's helpful. I don't think there are any further questions. Thank you very much to both of you. It was a very helpful oral argument on both sides. We will take the case under advisement. Thank you. Thank you, Your Honors.